IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT WHITTINGTON,<br><br>            Plaintiff,<br>     v.<br><br>CAROLYN W. COLVIN,<br>  Acting Commissioner of Social Security,<br><br>            Defendant. | CIVIL ACTION NO. 2:15-cv-314-WC |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

On May 23, 2012, Plaintiff Robert Whittington applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging a disability onset date of April 30, 2012. Tr. 178. Plaintiff's claims were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). On July 16, 2013, the ALJ held a hearing and, on September 6, 2013, the ALJ denied Plaintiff's claims. Plaintiff requested a review of the ALJ's decision by the Appeals Council ("AC") and provided additional evidence for the Appeals Council to consider. The Appeals Council denied the request for review on March 16, 2015. Thus, on that date, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court Middle District of Alabama, the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1

parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case and enter a final judgment. Based on the court's review of the record and the relevant law, the court REVERSES the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2] To make this determination, the Commissioner employs a five-step, sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) ("Even

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam).

## III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-four years old at the time of his last date insured, December 31, 2012. Tr. 161, 164. He has at least a high school education and can communicate in English. Tr. 56-57. His past work was as a roofer and roofer helper. Tr. 30, 80-82. Following the administrative hearing, the ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 30, 2012, through his last date insured, December 31, 2012. Tr. 23. At Step Two, the ALJ determined that Plaintiff suffers from the severe impairment of schizophrenia. Tr. 23. At Step Three, the ALJ found that through the last date insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments . . .." Tr. 23. The ALJ articulated Plaintiff's residual functional capacity as follows:

> The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant requires a sit/stand at will option; the claimant can occasionally bend, balance, stoop, kneel, crouch and crawl; the claimant can never climb ladders, ropes, or scaffolds; the claimant should avoid constant exposure to cold, heat, wetness, humidity, vibrations, and loud noises; the claimant should avoid all exposure to unprotected heights, dangerous machines, and uneven surfaces; the claimant is limited to low stress, unskilled work with no

> more than simple short instructions and simple work-related decisions with few workplace changes; the claimant is limited to occasional interaction with the general public, interaction with supervisors, and interaction with co-workers; and claimant is unable to work in close proximity to others because of being easily distracted.

Tr. 25. Having consulted a VE at the hearing, the ALJ found at Step Four that Plaintiff could not perform his past relevant work. Tr. 30. Then, at Step Five, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including small parts assembler, hand finisher, and garment folder. Tr. 31. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 30, 2012, his alleged disability onset date, through December 31, 2012, his date last insured. Tr. 31.

Plaintiff requested a review of the ALJ's decision by the AC and submitted additional evidence to the AC for consideration. The additional evidence included court records from 2010 concerning Plaintiff's involuntary hospitalization for hallucinations; an October 29, 2013, letter from Plaintiff to a judge; arguments from Plaintiff's counsel dated July 11, 2014, September 12, 2014, and October 23, 2014; a September 25, 2014, letter from Plaintiff's brother, Edward Whittington, M.D.[5]; medical records from Beth Manor Inpatient and Elmore County In Home dated November 21, 2013, to May 12, 2014; and medical records from Donald W. Blanton, Ph.D., dated October 2, 2014, and October 6, 2014. Tr. 5-6, 17, 249-68, 325-76. The Appeals Council expressly made the additional evidence part of its record, but found the evidence provided no basis to change the ALJ's decision, and denied Plaintiff's petition for review. Tr. 1-6. This action followed.

---

[5] Plaintiff's brother has a medical degree, and his specialty is obstetrics and gynecology. Tr. 75.

### IV. PLAINTIFF'S CLAIMS

Plaintiff presents three arguments for reversal of the Commissioner's decision: (1) the ALJ erred in his finding concerning the RFC where the ALJ "relied on a flawed State agency consulting psychologist's report"; (2) the ALJ erred in his finding concerning the RFC where the ALJ "failed to appropriately evaluate the 'other source' evidence of Mr. Whittington's brother"; and (3) alternatively, "remand under Sentence 6 of 42 U.S.C. § 405(g) [is] appropriate for the taking of New Evidence where the New Evidence indicates the administrative law judge failed to appreciate the severity of Mr. Whittington's psychiatric illness." Pl.'s Br. (Doc. No. 12) at 1.

### V. DISCUSSION

A disability claimant bears the initial burden of demonstrating the existence of a disability. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, that is, the testimony of the claimant and his family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981) (citations omitted). The ALJ must also state, with sufficient specificity, the reasons for the decision concerning the claimant's impairments. *See* 42 U.S.C. § 405(b)(1) (decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based").

Plaintiff was involuntarily hospitalized in 2010 for psychotic symptoms after he threatened to hurt his brother. Tr. 273. Plaintiff did not believe he had a mental illness but instead believed he was being investigated by the police, who could communicate with him and read his mind through a computer, speak through him, make him burn himself, and tried to erase his memory. Tr. 271-74, 293-94. By the time he was discharged, Plaintiff said his symptoms had disappeared completely. Tr. 272. Subsequent medical records indicate continued symptoms. *See generally* Tr. 301-24. At the hearing before the ALJ, Plaintiff testified he hears voices and responds to them "because it's like you can't really control the words coming out of your mouth. You know, they just—they just come out of your mouth." Tr. 76. Plaintiff testified that he heard voices the morning of the hearing, and he explained:

> It's still a police investigation and it was—it's just where they just—they can read your mind, the words come through your mouth and they just—they're just talking to you, you know, about you can think of something they can tell you what you're thinking, you know.

Tr. 77. Plaintiff testified the medicine he takes initially helped, but it stopped being as effective, that he sees his doctor every three months, and his next option was to try taking the medicine as a shot. Tr. 77-78.

Plaintiff argues that the report of one-time State agency consultative examiner, Warren G. Brantley, Ph.D., a psychologist, is flawed, and the ALJ's decision to give "considerable weight" to it is not supported by substantial evidence. Pl.'s Br. (Doc. 12) at 7-10; Tr. 28. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or

considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1527(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). A consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (one-time examiner's opinion is not entitled to great weight). A specialist's opinion generally receives more weight on those issues related to the specialty than the opinion of someone who is not a specialist. 20 C.F.R. § 404.1527(c)(6). Nonetheless, all opinions, even those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. § 404.1527.

Dr. Brantley's impression for Plaintiff was alcohol dependence with daily drinking, nicotine dependence, and "self-reported Psychotic Features in the form of auditory hallucinations." Tr. 298. Dr. Brantley plainly harbored reservations regarding Plaintiff's diagnosis of schizophrenia and was skeptical of his reports of related symptoms. *See id.* at 297-98 (finding "no evidence of schizoaffective disorder," remarking that Whittington's complaint of hearing voices "needs confirmation because he was supervising a business and employees up until this last December when he applied for disability benefits," speculating that Whittington's 2010 hospitalization at a psychiatric hospital was "related to alcoholism and polysubstance dependence" rather than a psychotic episode related to Plaintiff's schizophrenia, and limiting his impression of Plaintiff's condition to "*self-reported* residual Psychotic Features in the form of auditory hallucinations") (emphasis supplied). The ALJ concluded that Dr. Brantley's opinion "is within

8

the doctor's field of specialty, and is consistent with and supported by his findings. Furthermore, it is not inconsistent with the overall medical evidence in the record." Tr. 28. Accordingly, the ALJ afforded Dr. Brantley's opinion "considerable weight." Tr. 28.

Upon review of the record, the court finds that the ALJ's decision to afford Dr. Brantley's opinion "considerable weight"—and thus his tacit endorsement of Dr. Brantley's skepticism about Plaintiff's schizophrenia, notwithstanding the ALJ's finding that it is a severe impairment—is not supported by substantial evidence. Review of Plaintiff's medical records demonstrates his treatment, under the supervision of a treating psychiatrist, for auditory hallucinations and delusions continued into 2011, 2012, and after Dr. Brantley's assessment. As such, the "confirmation" Dr. Brantley claimed to need in order to credit Plaintiff's self-reports about auditory hallucinations is easily located in the record.

After his discharge from hospitalization in October 2010, Plaintiff was directed to continue treatment at Montgomery Area Mental Health Authority (MAMH), which he began in January 2011. Tr. 272. Plaintiff was treated primarily by either S. Banerjee, M.D., M.P.A., or C. Cohen, D.N.P., C.R.N.P., throughout 2011 and 2012, and his symptoms waxed and waned. Tr. 305-24. On November 30, 2011, about the time Dr. Brantley stated Plaintiff was still supervising a business and employees, Plaintiff visited with Dr. Banerjee, who reported positive findings for delusions, paranoia, and auditory hallucinations. Tr. 313. Plaintiff said the "police are still after him and they are investigating him [with] computers about a murder mystery at Gulf Shores which happened more than 10 years ago (as per pt.)." Tr. 313. Dr. Banerjee increased Plaintiff's prescription for

9

Risperdal[6] to 3 mg twice daily, and increased his Artane[7] prescription to 2 mg at night and 1mg in the morning. Tr. 313. On May 30, 2012, Plaintiff told Dr. Banerjee his pharmacy cannot give him Risperdal 3 mg, and it had to be 2 mg. Tr. 311. On that date Dr. Banerjee reduced his Risperdal to 2 mg, and reduced his Artane to 2 mg at night. Tr. 311. Although Plaintiff did not report hallucinations or delusions on May 30, 2012, Dr. Banerjee noted that Plaintiff's insight was poor and his judgment was impaired. Tr. 311. Neither Dr. Brantley nor the ALJ mentioned these documented abnormal mental health findings.[8] Tr. 28-29, 297.

Moreover, the record demonstrates Plaintiff's continued symptoms and treatment for auditory hallucinations after Dr. Brantley's report but prior to the date he was last insured. On August 30, 2012, nearly a month after Dr. Brantley's consultative examination, Plaintiff reported to Dr. Banerjee that he was hearing voices again and wanted his Risperdal increased Tr. 310, 323. Dr. Banerjee commented that Plaintiff's insight was poor and his judgment was impaired. Tr. 310. She increased his Risperdal to 3mg, increased his Artane to 2 mg at night and 1 mg in the morning. Tr. 310. She renewed his prescriptions on October 23, 2012. Tr. 310, 324. On November 28, 2012, Plaintiff reported he was still hearing some voices. Dr. Banerjee commented that he had poor insight and impaired judgment; his brother moved in with him; and she increased the dose of his psychotropic medication. Tr. 322.

---

[6] Risperdal "is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain." *See* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a694015.html (last accessed May 16, 2016).

[7] Artane is a brand name for the generic drug, trihexyphenidyl, which "is used to treat the symptoms of Parkinson's disease and tremors caused by other medical problems or drugs. This medication is sometimes prescribed for other uses . . . ." *See* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682160.html (last accessed May 16, 2016).

[8] Dr. Brantley suspected that Plaintiff's 2010 psychotic episode "was related to alcoholism and possibly polysubstance dependence. Residual features have not compromised his ability to own his own business up until this last December. No medical problems were observed." Tr. 298. Nevertheless, the ALJ did not mention these findings or address whether Whittington's alcohol or substance abuse affected his RFC.

The ALJ stated that Dr. Brantley's opinion is "not inconsistent with the overall medical evidence in the record," Tr. 28, but—other than to mention that Plaintiff was seen in August 2012 (Tr. 28)—the ALJ does not mention any of this evidence of Plaintiff's treatment after Dr. Brantley's assessment and before the last date insured. Nor does the ALJ address Dr. Brantley's failure to more fully engage with medical records indicating Plaintiff's abnormal mental health findings and treatment for schizophrenia prior to the date he issued his opinion.[9] Therefore, the court concludes, the ALJ did not adequately consider the evidence that both supported and detracted from the ALJ's findings, and the ALJ reversibly erred in affording "considerable weight" to Dr. Brantley's opinion in view of the entire record.[10] *See Cowart*, 662 F.2d at 735-36.

Plaintiff similarly challenges the ALJ's decision to give little weight to the third party report by Plaintiff's brother, Edward Whittington, M.D. Tr. 26-27. Although evidence from subjective, nonmedical, "other sources" cannot establish a medically determinable impairment, it is appropriate to consider the evidence to show the severity of the impairment and how it affects the ability to work. S*ee* 20 C.F.R. § 404.1513(a) & (d)(4). In doing so, it is appropriate for the ALJ to consider "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). The ALJ summarized the report from Dr. Whittington, stating,

> Mr. Whittington reported the claimant does light housework, but primarily sits on the porch and smokes cigarettes. Mr. Whittington reported when the claimant does

---

[9] The court struggles to conceive what would suffice for Dr. Brantley as "confirmation" of Plaintiff's auditory hallucinations and delusions, and their serious effects on his functioning, if Plaintiff's self-reporting, the report of Plaintiff's brother, a medical doctor who has observed and been greatly affected by Plaintiff's mental health issues, and the treatment records indicating Plaintiff's continued experiences of and treatment for auditory hallucinations and delusions were not sufficient to do so.

[10] The ALJ also relies on the August 20, 2012, opinion of Robert Estock. M.D., the state agency consultant. Tr. 29-30. Dr. Estock likewise relied on Dr. Brantley's assessment; thus, is it not surprising that Dr. Estock made findings similar to Dr. Brantley's. Tr. 95-96, 297-98.

11

> not take his medication he is unable to sleep, secondary to auditory hallucinations, and when he does take his medications, he is sleepy all day. He also reported they have to remind the claimant to take his medications, shave, and bathe. Mr. Whittington also reported the claimant does not prepare his own meals. He reported the claimant does laundry and light cleaning, but has to be reminded to do so. Mr. Whittington reported the claimant is unable to pay bills, handle a savings account, or use a checkbook/money order. He reported the claimant spends time with himself and others including visiting with his sister nightly during meals. He reported the claimant's disabling condition affects his abilities related to memory, completing tasks, concentration, understanding, following instructions, and getting along with others. He reported the claimant does not follow written or spoken instructions well. Mr. Whittington also reported the claimant is completely unable to handle stress and usually refuses to adopt to a new routine. Mr. Whittington reported the claimant has worsened over the years. He also reported the claimant's symptoms are somewhat controlled on medication, but he continues to have hallucinations.

Tr. 26-27.

In addition to the above, Dr. Whittington reported that his brother "might pay bills when already paid or forget to pay a bill. We sit with him and help him when this is needed. He recently paid a lawyer $7,000.00 to help him prove that the state police were 'cybernetically' controlling his brain." Tr. 219. Dr. Whittington further reported that his brother has no hobbies "other than sitting on the front porch & watching the trees & the birds," that ten years ago he worked all day, "but he subsequently became secluded & now isolated." Tr. 220. Plaintiff's sister "lives a stone's throw away," and his only social activities are nightly meals with his sister   and visits every one or two weeks with Plaintiff's brother, who also reported seeing Plaintiff four to six hours a week. Tr. 216, 220.  Dr. Whittington reported that Plaintiff used to have a thriving business and wealth, but now he trusts no one, and that Plaintiff wanted to hurt him, so he had to have him arrested. Tr. 221. He reported that Plaintiff had no boss for years, but Dr. Whittington believed that ten or twelve years ago Plaintiff was fired "when all of this began, but he subsequently was arrested." Tr. 222. He reported that Plaintiff cannot handle stress, "he pulls away from everyone. eg death of our mom 8 mos ago." Tr. 222. In the "Remarks" section, Dr. Whittington wrote, "The gist of the

matter is: Some 10-12 years ago, Robert became paranoid. He was particularly afraid of the police. . . . He worsened over the years . . . . He attempted to self medicate with alcohol and THC. . . .He is somewhat controlled on meds but continues to have hallucinations. His business has deteriorated to nothing & he has no way of earning a living--The details are much worse than this outline provides time or space for." Tr. 223.

The ALJ determined the third party "statements about the claimant's symptoms and functional limitations are considered partially credible as the alleged severity is not consistent with the objective findings from the evidence in the file, and therefore, it is given little weight." Tr. 27. As with the ALJ's decision to give considerable weight to Dr. Brantley's opinion, the ALJ's decision to give little weight to the third person report by Dr. Whittington fails to more fully acknowledge the objective medical evidence in the record that supports Plaintiff's continued auditory hallucinations, delusions, poor insight, and impaired judgment and, therefore, supports Dr. Whittington's statement. Apart from the fact that Dr. Whittington's statement is largely consistent with evidence in the record, the other factors listed in SSR06-03p warrant greater deference to Dr. Whittington's statement than was afforded by the ALJ.  Namely, Dr. Whittington's relationship with his brother appears close, as Dr. Whittington frequently observes and interacts with this brother and is extensively involved in providing for Plaintiff and ensuring that his needs are met.  Likewise, although Dr. Whittington ostensibly does not treat Plaintiff, and hence his report is not medical evidence, the fact that he is a medical doctor is a factor which tends to support the reliability of his observations and his assessment of Plaintiff's condition.  For all of these reasons, the court concludes the ALJ did not adequately consider the nonmedical opinion from Dr. Whittington in assessing the severity and functional effect of Plaintiff's impairment, and,

thus, the ALJ did not adequately consider both favorable and unfavorable facts in his review. *See Cowart*, 662 F.2d at 735.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000) (footnote and citation to *Sims*, 530 U.S. at 111 omitted). For the reasons given above, the court concludes that the ALJ erred in discharging his duty to "investigate the facts and develop the arguments both for and against granting benefits." *Id.* Thus, the case should be remanded for further proceedings. Because the court concludes Plaintiff's case must be remanded based on these grounds, the court does not address Plaintiff's alternative argument that the case should be remanded based on the evidence presented to the AC.

## VI. CONCLUSION

Based on the foregoing, it is ORDERED that the decision of the Commissioner denying benefits is REVERSED and this matter is REMANDED to the Commissioner. A final judgment consistent with this Memorandum Opinion and Order will be entered separately.

DONE this 20th day of May, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE